UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
ALIVELISSE TORRES,

Plaintiff,

- against -

**MEMORANDUM AND ORDER**

NATIONAL RAILROAD PASSENGER CORPORATION d/b/a AMTRAK and CONRAIL,

25 Civ. 1032 (NRB)

Defendants.
----------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Alivelisse Torres ("Torres" or "plaintiff") brought this suit on December 20, 2024, against the National Railroad Passenger Corporation ("Amtrak" or "defendant"),[1] alleging a single count of negligence. According to the complaint, Torres tripped on an uneven patch of sidewalk on East Tremont Avenue in the Bronx. ECF No. 1-1 ("Complaint") ¶ 31. The sidewalk runs parallel to and is separated from Amtrak's "Northeast Corridor" ("NEC") rail line by an eighteen-foot-high retaining wall. Although Amtrak does not own the sidewalk, plaintiff argues that it is nevertheless liable pursuant to New York City Administrative Code § 7-210, a local ordinance which shifts tort liability arising from poorly-

[1] The second defendant, Conrail, was dismissed from the case pursuant to a stipulation dated October 8, 2025. ECF No. 26. The dismissal of Conrail was appropriate because "Amtrak acquired the Amtrak Property pursuant to an April 1, 1976 conveyance from Conrail," ECF No. 22 ("Mot.") at 4, and Conrail "has no property interests in the area in question," ECF No. 14.

maintained sidewalks from New York City (the "City") to the owner of adjacent private property.

Presently before the Court is Amtrak's September 25, 2025 motion for summary judgment. ECF No. 20. Amtrak argues that Section 7-210 is preempted by several federal statutes enacted to exempt Amtrak, a federally-owned and operated corporation, from certain state and local regulations. Both parties agree that this legal issue is dispositive of Torres' claim if it is resolved in favor of Amtrak. For the following reasons, the Court concludes that Section 7-210 is preempted and that, consequently, Amtrak is not liable as a matter of law for Torres' injury.

**BACKGROUND**

Before discussing the parties' legal arguments, the Court will briefly recount the undisputed facts of the case. The facts herein are derived from Amtrak's Local Rule 56.1 statement and admissible evidence submitted in connection with the motion. ECF No. 23 ("D's 56.1"). Torres has not submitted her own Rule 56.1 statement of facts because "[p]laintiff generally agrees with the facts set forth by movant." ECF No. 27 ("Opp.") at 2. Torres makes three minor factual clarifications in her opposition brief, none of which are dispositive of any legal issue. Id.

On November 7, 2023, Torres walked on a portion of sidewalk parallel to East Tremont Avenue, between Commonwealth Avenue and St. Lawrence Avenue in the Bronx (the "Sidewalk"). D's 56.1 ¶ 1;

Opp. at 2. Torres tripped on a "broken up" portion of the Sidewalk and fell, sustaining injuries. Id. ¶¶ 2-5.

The Sidewalk is adjacent to a bus stop operated by the Metropolitan Transportation Authority ("MTA") for the Bx40, Bx42, and Bx36 bus lines. Id. ¶ 2. It also abuts a strip of real property acquired by Amtrak from Conrail in 1976 (the "Amtrak Property"). Id. ¶ 7. The Amtrak Property is a sunken rail line with two tracks running northbound and southbound. Id. ¶¶ 8-12, 14. Furthermore, the Amtrak Property is part of Amtrak's Northeast Corridor route and is situated between New York Pennsylvania Station ten miles to the South and the New Rochelle Station eight miles to the North. Id. ¶ 13.

It is undisputed that Amtrak does not own the Sidewalk where Torres tripped. Id. ¶ 18. The Amtrak Property is separated from East Tremont Avenue and the Sidewalk by an eighteen-foot, six-inch-high retaining wall. Id. ¶ 15: Opp. at 2. There are no Amtrak stops near the Sidewalk, no Amtrak facilities (other than the tracks themselves) near the Sidewalk, and Amtrak has never altered, used, improved, or installed any hardware on the Sidewalk at any time. Id. ¶¶ 16-29. Indeed, there is no way to access the Amtrak Property from the Sidewalk or vice versa. Id. ¶ 28.

**PROCEDURAL HISTORY**

On December 20, 2024, Torres filed this case in New York State Supreme Court, Bronx County, asserting a single claim for

negligence against Amtrak and Conrail.[2] See Complaint. On February 5, 2025, Amtrak removed the case from state court because Amtrak "was created by an Act of Congress, 49 U.S.C. § 24101, et seq., and more than one-half of its capital stock is owned by the United States." ECF No. 1 ¶ 4; see also 28 U.S.C. §§ 1349 ("The district courts shall not have jurisdiction of any civil action by or against any corporation upon the ground that it was incorporated by or under an Act of Congress, unless the United States is the owner of more than one-half of its capital stock."). Amtrak answered on February 11, 2025. ECF No. 4.

On June 4, 2025, Amtrak filed a letter pursuant to Rule 2(B) of this Court's Individual Practices, seeking leave to file a motion for summary judgment on the basis that "Amtrak does not own, maintain or control the subject sidewalk where Plaintiff had his accident, and pursuant to The Rail Passenger Service Act, 49 U.S.C. § 24101 et seq., Amtrak is not required to maintain the subject sidewalk that abuts right of way property." ECF No. 15. On August 5, 2025, the court held a conference and granted Amtrak permission to bring its motion for summary judgment.

On September 25, 2025, Amtrak filed its motion. Mot.; D's 56.1; see also ECF Nos. 19 ("Amtrak 2(C) Letter"), 20, 21 ("Ree

---

[2] Torres has also filed a different lawsuit arising from the same incident in New York State Supreme Court, Bronx County, against the MTA, the City, Metro North, and the Penn Central Company Corporation, also asserting a single claim for negligence. See NYSCEF 1, Torres v. Metropolitan Transportation Authority et al., Index No. 816515/2024E.

Decl."). On November 6, 2025, Torres submitted a memorandum of law in opposition, Opp., and on November 25, 2025, Amtrak replied, ECF No. 29 ("Reply").

**LEGAL STANDARDS**

Under Federal Rule of Civil Procedure 56(a), summary judgment is warranted when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine dispute of fact exists "where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008). Factual disputes that are irrelevant or unnecessary are disregarded. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In assessing whether a genuine dispute of material fact exists, the Court must "construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Gilman v. Marsh & McLennan Cos., Inc., 826 F.3d 69, 73 (2d Cir. 2016). However, a "pure legal question . . . is to be decided by the court." Hotel Des Artistes, Inc. v. Transamerica Ins. Co., 1994 WL 263429, at *3 (S.D.N.Y. June 13, 1994) (Sotomayor, J.); see also Grumman Allied Indus. v. Rohr Indus., 748 F.2d 729, 739 (2d Cir. 1984) ("Summary judgment is appropriate where the factual predicates of each legal question are undisputed.").

**DISCUSSION**

The parties agree that Amtrak does not own the Sidewalk where Torres tripped, and that Amtrak did not cause the defect or make any "special" use of the sidewalk such that it would be directly liable for common law negligence. Mot. at 7-9; Opp. at 1-3; see also Meyer v City of New York, 114 A.D.3d 734, 735 (2d Dep't 2014) ("[A]n abutting landowner is not liable to a passerby on a public sidewalk for injuries resulting from defects in the sidewalk unless the landowner either created the defect or caused it to occur by special use."). Rather, Amtrak's alleged liability is based on New York City Administrative Code § 7-210. Section 7-210 reads as follows:

> a. It shall be the duty of the owner of real property abutting any sidewalk, . . . to maintain such sidewalk in a reasonably safe condition.
>
> b. Notwithstanding any other provision of law, the owner of real property abutting any sidewalk, . . . shall be liable for any injury to property or personal injury, including death, proximately caused by the failure of such owner to maintain such sidewalk in a reasonably safe condition. . . .
>
> c. Notwithstanding any other provision of law, the city shall not be liable for any injury to property or personal injury, including death, proximately caused by the failure to maintain sidewalks . . . .

In sum, Section 7-210 (i) creates a nondelegable duty obliging private property owners to maintain New York City sidewalks abutting their property in safe condition and (ii) shifts tort

liability for accidents on sidewalks from the City to the owner of the adjacent property. Mot. at 11 (citing Xiang Fu He v. Troon Mgt. Inc., 34 N.Y.3d 167, 171 (2019)). "The City Council enacted section 7-210['s]" liability-shifting provision in 2003 "as a cost-saving measure[.]" Vucetovic v. Epsom Downs, Inc., 10 N.Y.3d 517, 521 (2008).

Amtrak does not dispute that it is liable for torts occurring on its own property. Reply at 3. Rather, Amtrak argues that Section 7-210, a municipal ordinance which extends Amtrak's liability to property it does not own, is preempted by two federal statutes, 49 U.S.C. § 24902(j) and 49 U.S.C. § 24301(l). Mot. at 7-21. For the following reasons, the Court finds that 49 U.S.C. § 24902(j) preempts N.Y.C. Admin. Code § 7-210 and thereby immunizes Amtrak from any tort liability arising from Torres' use of the Sidewalk.

**a. 49 U.S.C. § 24902(j)**

Amtrak was created by an Act of Congress in 1970, following the "collapse of the [private] passenger railroad industry." Mot. at 13-14 (citation omitted). In order to ensure continued public access to interstate passenger railroad service, Congress created Amtrak and has heavily subsidized its operations ever since. Dep't of Transp. v. Ass'n of Am. Railroads, 575 U.S. 43, 53 (2015) ("In its first 43 years of operation, Amtrak has received more than $41 billion in federal subsidies. In recent years these subsidies have

exceeded $1 billion annually.”). In recognition of Amtrak’s ongoing fiscal deficits, as well as the significant benefits received by states and municipalities from having access to Amtrak interstate services,[3] Congress passed a series of statutes immunizing Amtrak from various state and local laws. See 49 U.S.C. §§ 24301(g) (Amtrak exempt from “rate[], route[], [or] service” laws), 24301(l) (Amtrak exempt from “tax[es], fee[s], head charge[s], or other charge[s]” levied by states or municipalities), 24902(j) (Amtrak property exempt from local laws as a ”federal enclave”).

“Section 24902(j) was intended to exempt Amtrak from burdens imposed by state and local governments.” City of New York v. Nat’l R.R. Passenger Corp., 06 Civ. 793 (SLT) (RER), 2009 WL 483343, at *4 (E.D.N.Y. Feb. 25, 2009). The statute reads, in relevant part, as follows:

> (j) Applicable procedures.--No State or local building, zoning, subdivision, or similar or related law, nor any other State or local law from which a project would be exempt if undertaken by the Federal Government or an agency thereof within a Federal enclave wherein Federal jurisdiction is exclusive, . . . shall apply in connection with the construction, ownership, use, operation, financing, leasing, conveying, mortgaging or enforcing a mortgage of (i) any improvement

---

[3] The immunities provided to Amtrak have been described as a “user contribution” by the states and cities along its routes, which passively benefit from the availability of interstate railroads. Nat’l R.R. Passenger Corp. v. Com. of Pa. Pub. Util. Comm’n, 665 F. Supp. 402, 405 (E.D. Pa. 1987), aff'd, 848 F.2d 436 (3d Cir. 1988) (quoting S.Rep. No. 516, 97th Cong., 2d Sess. 170 (1982)).

> undertaken by or for the benefit of Amtrak as part of, or in furtherance of, the Northeast Corridor Improvement Project (including without limitation maintenance, service, inspection or similar facilities acquired, constructed or used for high speed trainsets) or chapter 241, 243, or 247 of this title or (ii) any land . . . on which such improvement is located and adjoining, surrounding or any related land.

49 U.S.C. § 24902(j).

Courts have found that Section 24902(j) exempts Amtrak from a variety of local ordinances that might otherwise apply to its properties along the Northeast Corridor. For example, in Nat'l R.R. Passenger Corp. v. Arch Specialty Ins. Co., Judge Rakoff of this court found that Amtrak "need not comply with local fire ordinances" because "§ 24902(j) immunizes Amtrak's property and the use of that property from state and local laws as if it was part of a Federal enclave wherein Federal jurisdiction is exclusive." 124 F. Supp. 3d 264, 278 (S.D.N.Y. 2015) (internal citation and quotation marks omitted); see also Nat'l R.R. Passenger Corp. v. Caln Township, 2010 WL 92518, at *4-5 (E.D. Pa. Jan. 8, 2010) (holding that Amtrak is exempt from a local ordinance regulating the heigh of vegetation pursuant to Section 24902(j)).

Torres does not dispute that the Amtrak Property is part of Amtrak's Northeast Corridor and the Northeast Corridor Improvement Project ("NCIP") or that the operation of the Amtrak Property is

"in furtherance of, chapter 241, 243, or 247" of Title 49.[4] See 49 U.S.C. § 24902(j). Rather, Torres argues that "[Section 24902(j)] appears aimed at building and zoning regulations that would affect projects or improvements to be constructed" because "it[] references construction, financing, conveying, mortgaging of improvements and land." Opp. at 4-5. Put simply, Torres argues that Section 24902(j) does not apply to (i) general regulations or (ii) any property not actively under construction.

The Court disagrees with Torres' narrow reading of the statute. First, Section 24902(j) exempts Amtrak from statutes regulating "use, [or] operation" of its land, not only construction of new facilities. For example, in Caln Township, the court held that Amtrak was exempt from a local ordinance mandating that "weed or plant growth be maintained at eight inches or less" because "the Ordinance seeks to regulate Amtrak's 'use' or 'operation' of 'land . . . on which [Northeast Corridor improvements] are located and adjoining, surrounding or any related land.'" 2010 WL 92518, at *5 (quoting 49 U.S.C. § 24902(j)) (alterations in original). The sidewalk maintenance obligation imposed by Section 7-210 is

[4] Chapter 241 sets the "Mission" and "Goals" of Amtrak, including the facilitating of "intercity . . . rail passenger transportation" along "the Northeast Corridor." 49 U.S.C. § 24101(c)(11); see also Mot. at 19. Chapter 243 defines Amtrak's facilities to include "a rail line, right of way, fixed equipment, facility, or [related] real property." 49 U.S.C. § 24309(a)(1). Lastly, Chapter 247 mandates that "Amtrak shall operate a national rail passenger transportation system." 49 U.S.C. § 24701.

similarly a regulation of Amtrak's "use" or "operation" of the Northeast Corridor and "surrounding or related" property.

Second, Section 24902(j) exempts Amtrak from any law that is "similar or related" to "building, zoning, [or] subdivision" ordinances. The Court finds that Section 7-210, which obliges Amtrak to maintain or even reconstruct city sidewalks is, by its plain language, "similar or related" to zoning or building regulations, if not a zoning or building regulation in and of itself.

Third, Section 24902(j) exempts Amtrak property from "any other State or local law" to the same extent as a federal enclave, without any restriction to "zoning" or similar ordinances. See Arch Specialty Ins. Co., 124 F. Supp. 3d at 278 ("[W]hile [Section 24902(j)] begins with a reference to 'local building, zoning, subdivision, or similar or related law' . . . it then clarifies that its reach extends to 'any other State or local law' from which the federal government would be exempt[.]") (emphasis in original).

Finally, Section 24902(j) and similar immunity provisions "should be liberally construed to effectuate [Congress'] goals." See Nat'l R.R. Passenger Corp., 665 F. Supp. at 411. Congress passed Section 24902(j) and similar provisions because "a very substantial portion of Amtrak's operating budget comes from federal appropriation," id., and because in 1997, when Section

24902(j) was passed, "Amtrak was in a financial crisis." Reply at 7 n.5 (citing Pub. L. 104-205, 110 Stat. 2951). Amtrak continues to operate at a loss and receives federal subsidies. See Dep't of Transp., 575 U.S. at 53; see also Amtrak's Northeast Corridor – The Nation's Most Traveled Railroad, AMTRAK (2021), available at https://www.amtrak.com/content/dam/projects/dotcom/english/public/documents/corporate/nec/fact-sheets/amtrak-nec-fact-sheet-ye2021.pdf. The Northeast Corridor is one of the busiest transportations routes in the world and is an essential economic artery for all the states and cities along its route. If this Court held that New York City or any other state or local government along the NEC could impose financial burdens on Amtrak for local improvements to property Amtrak does not own, it would necessarily reduce the funds available for the NEC and defeat the purposes for which Section 24902(j) and its sister statutes were instituted.

In conclusion, the plain language of 49 U.S.C. § 24902(j) and Congress' legislative intent make clear that N.Y.C. Admin. Code § 7-210 is preempted.[5] Because Amtrak does not own or use the

[5] Amtrak also asserts that 49 U.S.C. § 24301(l), which exempts Amtrak "from a[ny] tax, fee, head charge, or other charge, imposed or levied by a State, political subdivision, or local taxing authority on Amtrak," preempts Section 7-210. Mot. at 13-18. Torres argues that N.Y.C. Admin. Code § 7-210 is not analogous to a "tax[,]" "fee[,]" or "other charge," and thus is not preempted. Opp. at 3-4. However, having already held that 49 U.S.C. § 24902(j) preempts N.Y.C. Admin. Code § 7-210, the Court need not reach the issue of whether 49 U.S.C. § 24301(l) does the same. See Reply at 7 (the Court "need not decide" whether both statutes apply).

Sidewalk and has no duty to maintain the Sidewalk without Section 7-210, Amtrak cannot be liable for Torres' injury as a matter of law.

**CONCLUSION**

For the preceding reasons, the Court grants Amtrak's motion for summary judgment.

The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 20 and close the case.

Dated: July 29, 2026
New York, New York

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE